1  ADAM ZOLDESSY, PRO SE
2  185 Caballo Drive
3  Sedona, AZ 86336
4
5
6  UNITED STATES DISTRICT COURT
7  DISTRICT OF ARIZONA
8  _____   CASE NO. 3;2—CV-08329-SPL
9
10  Adam Zoldessy,
11
12              Plaintiff,           PLAINTIFF REQUEST FOR
13                                   JUDICIAL NOTICE
14
15
16      v.
17
18  MUFG Union Bank, N.A. d/b/a Union    [Filed concurrently with Request for
19                                       Judicial Notice]
20  Bank,
21
22  _____
23

24       Plaintiff, Adam Zoldessy, ("Plaintiff" or "Zoldessy") submits this Opposition/Response

25  to Defendant, MUFG Union Bank, N.A. d/b/a Union Bank's ("Defendant") Motion to Dismiss

26  supports by the Memorandum of Points and Authorities, pertinent portions of the Court record,

27  the accompanying Request for Judicial Notice and the Complaint filed herein.

28

29          **MEMORANUM OF POINTS AND AUTHORITIES**

30  **I.      INTRODUCTION AND FACTUAL BACKGROUND**

31       Defendant brings a Motion to Dismiss, outright disregarding the actual allegations

32  detailed in the Complaint. Defendant conveniently disregards the facts as alleged, detailing a

33  faulty loan servicing scheme through which Plaintiff, and potentially other borrowers, are

34  victimized.  Plaintiff, merely by making an inquiry on line at Defendant's own website,

35  regarding forbearance options, was unilaterally placed into forbearance by Defendant, without

36  Plaintiff's knowledge or consent. Plaintiff was harmed.

37       As alleged, that forbearance status, imposed at the whim of Defendant, foreclosed the

38  option to re-finance options.  This scheme, as alleged, was incentivized by servicing fees

1   available to Defendant, and like-situated lenders/servicers, across the United States, to place
2   borrowers into forbearance status in the wake of COVID. As detailed in the Complaint and
3   herein, federal legislation, namely the CARES Act, provides for such incentives, permits
4   borrowers voluntarily to go into forbearance; it does not permit involuntary forbearance and the
5   attendant and foreseeable economic harm that would cause borrowers.

6          Reduced to its essence, Defendant, in lieu of valid argument or authority, engages in
7   innuendo and conclusory statements: Defendant produces for the Court prior foreclosure
8   information regarding Plaintiff  dating back many years (failing to articulate how it has any
9   bearing on this case or a Motion to Dismiss), does not dispute that forbearance status was applied
10  by Defendant to Plaintiff, states that Plaintiff should not "be surprised" that he was placed into
11  forbearance at the whim of Defendant; and baldly concludes that Plaintiff cannot "establish" its
12  claims.

13         Essentially, in all of its Points, Defendant (a) evades the actual pled allegations; (b)
14  evades the precise issue of the Defendant's overall conduct (the faulty loan servicing scheme,
15  one effectuated solely at its discretion and control and from a position of vastly superior
16  resources and bargaining power), as well as all of the attendant factual issues arising therefrom;
17  and (c) seeks to adjudicate facts yet to be ascertained or developed and all in its favor, ostensibly
18  to avoid discovery and proper adjudication of its conduct.

19         Also accompanying this Memorandum is a Request to Take Judicial Notice, of a National
20  News Article associated with faulty financial institutional loan scheme since the onset of
21  COVID. This was an exhibit attached in a federal case currently pending in Virginia concerning
22  borrowers being involuntarily placed into forbearance.  The Court is respectfully referred to two
23  known pending Federal District Court cases concerning a financial institution's conduct with a
24  forbearance program/scheme instituted in the wake of COVID, the complexities attendant to
25  them and resulting, pending Congressional investigation. Green, et als. v. Wells Fargo Company,
26  et als, (Case No. 3:20-cv-05296-JCS D.) and Forsburrg, et als. v. Wells Fargo & Co., et als (
27  Case No. 5:20-CV-00046 W.D.Va 2020)

28         The Complaint is incorporated by reference. As briefed below, Congress passed the
29  Coronavirus Aid, Relief and Economic Security Act ("CARES Act"). The Act included amongst
30  other things help for mortgage borrowers. One of these provisions permitted borrowers affected
31  by COVID-19 to request that their mortgage loan be temporarily placed in forbearance. Lenders

1  are given servicing fees from the Government when placing as borrow into forbearance as

2  further detailed below.  Complaint at pars. 11, 29 and 37.  The program is inherently voluntary.

3  The Plaintiff's loan is federally backed and subject to the CARES Act. Defendant takes

4  exception to the fact that Plaintiff does not state that the subject loan is federally backed but does

5  not deny it. Should this require Amendment, Plaintiff requests leave to do so.

6         An abridged summary of the allegations that must be presumed true, along with all

7  plausible inferences thereof, includes specific allegations of unlawful conduct by Defendant

8  spanning several months, in its faulty loan servicing program, implemented involuntarily, not

9  voluntary (See, Complaint at par. 33).  Plaintiff merely made inquiry of its options at

10 Defendant's website (Complaint at par. 7, 8 and 15) and was unilaterally placed into forbearance

11 without Plaintiff's knowledge or consent resulting in harm to Plaintiff, all while incentivized to

12 make servicing fees at the expense of Plaintiff, as receiving a windfall as a result of involuntarily

13 placing Plaintiff into forbearance. (See, Complaint pars. 15-37).

14        From a position of vastly superior sophistication, resources and bargaining power,

15 Defendant unilaterally placed a borrower into undisclosed, involuntary "forbearance" with terms

16 of its own choosing for at least six months (Complaint at par 27). Defendant's faulty scheme, as

17 stated and that can be inferred from the allegations pled, was effectuated on Plaintiff and

18 ostensibly other borrowers, in such a manner that Plaintiff never: (a) received legally required

19 disclosure from the borrower Plaintiff to determine a loan modification; (b) without disclosing

20 that Plaintiff would in effect, be committing to non-consensual loan modification merely by

21 making an inquiry; (c) without Defendant ever disclosing or negotiating any specific

22 "forbearance" options or plans required by law; (d) without receiving any  required "financial

23 hardship" certifications from Plaintiff; (e) omitting any disclosure that the Bank would

24 automatically modify Plaintiff's loan with undisclosed "forbearance" status; (f) omitting any

25 disclosure of the character and terms of the loan modification at the time of the loan modification

26 or after; (g) continuing acts and omissions despite demand from Plaintiff to desist and correct

27 through identified telephonic conversations.

28         Plaintiff only learned on its "forbearance" status from a third-party bank/lender that

29 disclosed to Plaintiff that he could not re-finance due to said undisclosed "forbearance. See

30 Complaint at par. 19.

1  　　　　Defendant repeatedly represented that grievances would be addressed and
2  correction/redress taken in response to Plaintiff's demands. If anything, Defendant continued
3  with its faulty scheme and didn't take any action to correct it. None of the grievance or redress
4  was ever done.  And all while Plaintiff remained current on his mortgage.  See, Complaint at
5  pars.  18-29. Plaintiff was barred from any re-finance options as a result of "forbearance." See
6  Complaint at pars. 19 and 21. Borrowers in forbearance are not eligible for-refinance, and
7  Plaintiff's re-finance application could not be considered.

8  　　　　As detailed in the Complaint, Plaintiff is harmed, through the afore-mentioned faulty
9  forbearance or loan services/modification scheme, solely for making loan modification inquiries
10  during a time of an historic pandemic. The allegations as pled, and all inferences derived thereof,
11  are to be presumed true for purposes of this Motion, under the governing standards.

12  　　　　Not only does Defendant chose to disregard the specific pled allegations, it is submitted
13  that all legal arguments are inherently flawed as a result.  Moreover, statutes and case law, it is
14  submitted, compel denial of the instant Motion. Likewise, no case with the facts as pled here are
15  cited by Defendant. This case entails complex fact and legal issues of first impression to the
16  knowledge of Plaintiff, particularly as the facts concern loan disclosure, loan servicing and other
17  financial issue arising out of the COVID pandemic, both on an institutional scale, and how it was
18  employed on Plaintiff to his detriment.

19  　　　　Accordingly, Defendant's Motion should be denied in its entirety. Should the Court
20  determine any claim as pled is not sufficient Plaintiff requests permission to Amend the
21  Complaint.

22  **II.      DEFENDANT HAS NOT MET THE LEGAL STANDARD FOR DISMISSAL**
23  **         ON THE GROINDS ACTUALLY ALLEGED IN THE COMPLAINT**
24

25  　　　　The Court is referred to the factual allegations contained in the Complaint and outlined
26  above and that are incorporated here by reference. The instant Complaint must contain "a short
27  and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro.
28  (8)(a)(2)  See, Ashcroft v. Iqbal, 556 US 662, 678 (2009) (detailed factual allegations not
29  required for this standard,  but more than "unadorned" harmed accusation") (q*uoting* Bell Atl.
30  Corp. v. Twombly, 550 US 544, 555 (2007). Plaintiff has satisfied this standard, as the allegations
31  as pled are  "plausible on [their] face," in that there is "factual content that allows the court to
32  draw the reasonable inference that the defendant is liable for the misconduct

1     alleged." <u>Id.</u> (<u>quoting</u> <u>Twomby</u>, 550 US at 556, 570.). The allegations as pled are more than

2     "unadorned harmed accusations." For as Failure to State a Claim Motion, a Court "must take all

3     the factual allegations in the complaint as true " but need not "accept as true a legal conclusion

4     couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

5         For those Counts alleging fraud, Fed.r.Civ.P.9(b) requires allegations to be "specific

6     enough to give defendants notice of the particular misconduct which is alleged to constitute the

7     fraud charged so that they can defend against the charge and not just deny that they have done

8     anything wrong." <u>Bly-Magee v. California</u>, 236 F.3d 1014, 1019 (9th Cic. 2001). ) Here, it is

9     submitted that the factual allegations for fraud do state the "time, place, and specific content of

10    the false representations as well as the identities of the parties to the misrepresentation." <u>See</u>,

11    <u>Schreiber Distr. Co. v. Sery-Well Furniture Co</u>., 806 F.2d 1393, 1401 (9th Cir.1986).

12        It is submitted that the factual allegations are specifically pled here for all Counts, fraud

13    and non-fraud related, under these standards. Specific acts/omissions and intent on the part of

14    Defendant are alleged. Time, place and specific content of false representations, acts, omissions,

15    reliance and damage (including, but not limited to: misleading website portal/advertisement,

16    telephonic communications, demands by Plaintiff  to desist and redress, non-disclosed and

17    misleading loan servicing procedures, ongoing omissions of loan account status, ongoing

18    representations that loan grievance would be addressed and remedied, unauthorized and non-

19    disclosed modification of Plaintiffs loan and changed account and credit and resulting economic

20    loss) all of which of which were done deliberately or recklessly as alleged.  Defendant cannot

21    succeed on a Motion to Dismiss for mere say-so, while wholly ignoring the alleged overall faulty

22    scheme for loan servicing, for Plaintiff and any borrowers potentially affected demonstrating the

23    character and extent of said scheme.

24        Moreover, all pled factual allegations specifically pled for this faulty scheme outlined in

25    the Complaint and above, both on an individual scale for Plaintiff and potentially on an

26    institutional scale affecting any borrower who merely inquired of "forbearance" or loan servicing

27    options, demonstrate that dismissal on all grounds sought by Defendant, lack merit.

28        Plaintiff respectfully reiterates that Defendant in its initial Motion papers doesn't address,

29    much less respond, to the actual pled allegations. It is submitted that Defendant makes blanket,

30    canned legal arguments and offers general denials without applying the applicable dismissal

31    standard to the actual facts as alleged. Therefore, the Motion should be denied its entirety.

1   **III.    DEFENDANT DOES NOT IDENTIFY OR ADDRESS THE ACTUAL PLED**
2           **ALLEGATIONS, ALLEGATUONS THAT DO MAKE OUT COLORABLE**
3           **CLAIM FOR CONSUMER FRAUD**
4

5           Defendant makes several arguments that do not address, much less point out, why the
6   widespread faulty loan servicing scheme all alleged against Defendant. In fact, the Complaint
7   lays out specific allegations for a faulty loan servicing scheme affecting Plaintiff and potentially
8   any. borrower that merely inquired about forbearance or loan modification options offered by the
9   Bank.
10          Defendant correctly cites authority regarding the broad scope of the Arizona Consumer
11  Fraud Act (the "CFA") that is remediation oriented. Defendant incorrectly alleges that Complaint
12  doesn't allege a colorable claim as there is no "merchandise" pled in the Complaint.
13          Defendant omits any reference to the actual allegations detailing a systemic,
14  institutionalized scale faulty loan servicing scheme conduced solely at the control and
15  convenience of Defendant. A scheme conduced from a position of vastly superior resources and
16  bargaining power. A faulty scheme for loan servicing services for purposes of the Act.
17          Defendant correctly notes that Plaintiff must allege a "sale," "advertisement," and
18  "merchandise" under the Arizona Consumer Fraud Ac (the "CFA") but ignores the allegations as
19  pled. Defendant baldly states that Plaintiff doesn't allege a merchant-consumer transaction
20  constituting "merchandise," but ignores the facts pled, specifically alleging an extensive faulty
21  loan servicing scheme that harmed Plaintiff.
22          The CHA is remedial nature. Plaintiff specifically alleges a misleading internet site
23  controlled by Defendant and disseminates on a wide-scale basis. Plaintiff has alleged unlawful
24  loan servicing practices. Defendant concedes that mortgage loans are "sales" for the purposes of
25  the CFA. Loans as conceded by Defendant can be "merchandise."   Here, Defendant, ignoring all
26  allegations of the Complaint, ignores the pleading allegations regarding its faulty loan servicing
27  scheme, perpetrated on Plaintiff and potentially any borrower in contract with Defendant that
28  made inquiry on Defendant's website.
29          The CFA provides as following:
30          Ariz Rev. Stat. Section 44-1522(A) lists false
31          pretense, false promise, misrepresentation, or
32          concealment, suppression, or omission of any material
33  f        act as prohibited acts.
34

1      Ariz, Rev. Stat. Section 44-1521 et seq. prohibits all deceptive acts or practices
2      in the conduct of any business, trade or commerce or in
3      the furnishing of any service.
4

5      The. Complaint specifically alleges wrongful loan services/practices arising out of

6 Plaintiff's real estate loan. Specific allegations are made at length regarding Defendant's faulty

7 forbearance or loan modification program. Services are expressly included in the scope of the

8 CFA. The Arizona High Court expressly construes "merchandise" broadly and ruled it applied to

9 loans for real estate. It broadly construes the definition of "merchandise" as the statute is

10 remedial  See, Villegas v. Transamerica Fin. Services, 147 Ariz. 100, 103 (AZ 1985). ("The

11 broad definition of merchandise, covering both tangibles and intangibles, and the broadly

12 remedial purposes of the legislation require this result."). Loan services are included as

13 "merchandise.  Plaintiff's Complaint therefore makes a viable claim under the CFA for purposes

14 of this Motion.

15      Defendant cites Holeman v Neils, 803 F. Supp. 237 (D.Ariz.1992). to support its standing

16 argument. The facts of that case are entirely distinguishable. That case did not allege or concern

17 a institutionalized scale faulty loan servicing scheme as pled here. That case concerned a

18 summary judgment motion, not a Motion to Dismiss, as here, but rather a real estate investment

19 scheme. Likewise, the Court denied summary judgment to both parties. The Court did not

20 dismiss Consumer Fraud allegation. Notably, this case supports Plaintiff's case, as it does

21 concern "merchandise." See, Holeman, 803 F. Supp. at 242 ("The definition of merchandise

22 includes real estate. A.R.S. Section44-1521(5) (1987).) This case certainly concerns real estate.

23 Defendant states that this case doesn't concern a "new loan." No authority is presented to support

24 legal claim that a "new" loan is a "standing" pre-requisite for a CFA claim, as there are none,

25 and it is submitted that same would undo the express language of the CGA and its remedial

26 purpose.

27      Likewise, Defendant cites Kuehn v. Stanley, 208 Ariz. 124, 130 91 P.3d. 346, 352

28 (App. 2004). That case involved appellate review of a full trial of an appraisal issue, not an

29 alleged wide-scale faulty loan scheme.  The decision briefly states that in that trial there was no

30 proof of" reliance: required in that case for a CFA claim.  Here, Defendant doesn't state that

31 reliance isn't pled. Defendant doesn't elaborate on "reliance" whatsoever or why the Kuehn case

32 applies, and it is submitted, it does not.

1       Finally, Defendant baldly states is self-serving, conclusory manner that Plaintiff

2 "hypothesizes" about an "incentive structure." It is respectfully submitted that such statement is

3 misleading and outright ignores the allegations contained in the Complaint. The Complaint

4 specifically alleges as at par. 37 that the CARES ACT specifically furnishes incentives to

5 institutions such as Defendant to place borrowers into forbearance or to modify their loans in the

6 wake of COVID subject to proper protocols. The faulty scheme that Defendant actually

7 employed is detailed at length in the Complaint and at Point I.

8       Accordingly, Defendant's request to Dismiss the CFA Count lacks merit and should be

9 denied,

10 **IV.    DEFENDANT DOES NOT IDENTIFY OR ADDRESS THE ACTUAL PLED**
11         **ALLEGATIONS, ALLEGATUONS THAT DO MAKE OUT COLORABLE**
12         **CLAIM FOR BREACH OF CONTRACT**
13

14       Defendant fails to address the Complaint. Defendant does not dispute that they are in

15 privity with respect to Plaintiff (successor and/or servicer for Deed of Trust and Note). Nowhere

16 does Defendant furnish any authority that it can unilaterally modify a note or mortgage for real

17 estate without a borrower's knowledge or consent. The Complaint specifically alleges that

18 Defendant breached its contracts (here, Deed of Trust and Note) by unlawfully modifying the

19 repayment terms.  Thus, it is submitted there is a colorable claim for breach of contract, as the

20 requisite elements have been pled, ie. "the existence of a contract, breach and damages."

21 Notably, Defendant does not dispute that they hold and/or service the subject loan. Nor do they

22 disputed that they are federally backed, which they are. Plaintiff requests leave to Amend if this

23 is deemed required for the legal pleading requirements for privity and CARES Act application.

24       Defendant also baldly asserts that damages are "speculative."  Based on the standard for a

25 Dismissal Motion, Plaintiff is not required to prove, but rather allege, sufficiently to notice

26 Defendant, of its claims. Damages are not required to proven or calculated, as they are at trial.

27       Generally, Fed. R, Civ. Pro. 8(a)(2) requires Plaintiff to set forth a "short and plain

28 statement of the claim showing that the [plaintiff] is entitled to relief," in order to "give the

29 defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v.

30 Twombly, 550 U.S. 544, 555**,** 127 S.Ct. 1955 (2007), quoting Conley v. Gibson, 355 U.S. 41, 47

31 78 S.Ct. 99 (1957).

1    When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact

2    are taken as true and construed in the light most favorable to the non-moving party." Smith v.

3    Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996). This Court must assume that all general allegations

4    "embrace whatever specific facts might be necessary to support them." Pelosa v. Capistrano

5    School District, 37 F.3d. 517, 521 (9th Cir. 1994).

6    Defendant baldly states that Plaintiff's damages allegations are "speculative" without

7    furnishing any elaboration or applicable authority. It is submitted that Defendant substitutes

8    factual proof issues with pleading averment rules applicable here.

9    It is submitted that Defendant's argument lacks any merit and should be denied.

10
11   **V.      DEFENDANT DOES NOT IDENTIFY OR ADDRESS THE ACTUAL PLED**
12   **ALLEGATIONS, ALLEGATUONS THAT DO MAKE OUT COLORABLE**
13   **CLAIM FOR FRAUD**
14

15   Defendant again ignores the actual allegations of the Complaint. First, Defendant does

16   not furnish any case warranting dismissal based upon the allegations of fraud actually pled. No

17   case relating to the facts as pled is argued to support dismissal, as it is submitted, there are none.

18   Second, Defendant offers its own tortured interpretations of the Complaint, not viable

19   legal argument addressing the actual pled allegations. Even more, Defendant resorts to innuendo

20   and extrinsic information not contained in the Complaint. This, it is submitted, is not appropriate

21   legal argument; it is self-serving innuendo, the motives for which speak for themselves.

22   More specifically, Defendant repeatedly refers to Plaintiff's "prior history of default"

23   occurring years before this Complaint was filed and does so again in its Fraud Count argument

24   (Memorandum page 8.) This information is extrinsic. It is not alleged or explained how or why

25   Plaintiff's prior credit or loan record is at all relevant to this Motion or the conduct alleged

26   against this Defendant in the year 2020.

27   To the extent that Defendant chooses to torture or ignore Plaintiff's actual pled factual

28   allegations (Plaintiff alleges that he was harmed when placed automatically into "forbearance" of

29   Defendant's choosing merely for inquiring regarding his options with Defendant), and attribute

30   blame to Plaintiff for conduct alleged against Defendant, such statements are self-serving and

31   demonstrates the lack of merit to the relief sought. Defendant states in lieu of valid argument at

32   page 8 of its Memorandum:

1           "To the extent that his claim is based on Plaintiff's theory that he
2        requested a forbearance on multiple occasions in the middle of a pandemic
3        and found that he was, in fact, placed into a forbearance program—this is not
4        fraud, nor it is even surprising.
5

6   "Requests" are not identified by Defendant, as they aren't actually pled.  Plaintiff merely

7   inquired as invited to do by Defendant. "Forbearance" is not identified, as Defendant

8   acknowledges that forbearance was applied, but omits the fact as pled that its terms were not

9   disclosed to or authorized by Plaintiff.  In this context, Defendant appears to suggest that

10   Plaintiff's plight, brought on by Defendant's alleged, unlawful conduct, shouldn't "surprise"

11   Plaintiff.  The presence or absence of surprise is not legal authority supporting dismissal; rather,

12   such commentary is self-serving and inflammatory and betray absence of any basis for dismissal.

13        Third, the actual elements of fraud are pled with sufficiency under Rule 9 "time and

14   place" requirements. The elements of fraud are:

15        1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's
16        knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the
17        information should be acted upon by the hearer and in a manner reasonably
18        contemplated; (6) the hearer's ignorance of the information's falsity; (7) the
19        hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the
20        hearer's consequent and proximate    injury. <u>Burkons v. Ticor Title</u>, 165 Ariz. 299,
21        798 P.2d 1308, 1317 (Ariz. App. 1989).
22

23        The Court is referred to the Complaint and POINT I of this Response Memorandum. All

24   facts and plausible inferences thereof should be presumed true for this Motion. Plaintiff has met

25   the pleading standard for Fraud. Representations are identified. Their falsities are identified (that

26   inquiry was just inquiry). The speakers are identified (Defendant's telephonic agents). The

27   website and telephonic conversations with Defendant agents are identified.  The Materiality is

28   identified (that mere inquiry would result in throwing borrower into involuntary forbearance and

29   whose terms are not disclosed). The proximate injury is identified (inability to re-finance).

30        Notably, counsel for Defendant has acknowledges to the undersigned that Defendant is in

31   possession of said recorded conversation(s).

32        The materiality of the false representations are identified.  The speakers intent that

33   Plaintiff should and would reasonably rely is identified. Plaintiff's ignorance of the ongoing

34   representations and their falsity is identified. The Plaintiff's reliance on the truth heard is

1    identified. The Plaintiff's right to rely is identified. Plaintiff's proximate injury is identified.

2    Accordingly, the fraud elements under Burkons v. Ticor Title, 165 Ariz. 299,        798 P.2d

3    1308, 1317 (Ariz. App. 1989) are satisfied.

4           Finally, not one statutory or case law authority cited by Defendant in any way supports

5    dismissal of this or any other Count. Defendant engages in further speculation in lieu of

6    coherent, viable legal argument. Defendant speculates alternatively that the CARES ACT does or

7    does not apply here, even though it is alleged that it does.

8           Defendant also opines in conclusory manner "that there would be no credit reporting to

9    the contrary to negatively affect his credit score" as Plaintiff had the audacity to stay current on

10   his mortgage (begging the question as to why Defendant unilaterally and without authorization

11   placed Plaintiff's loan and account into forbearance status, said information being publically

12   available to other lenders, all of which must be presumed true for purposes of this Motion.)

13           Defendant then opines that Plaintiff does not allege that forbearance lasted "more than

14   180 days." No coherent or viable explanation is offered for this statement, couched as legal

15   argument. No legal authority is presented for dismissal. Rather, this begs the question, again, as

16   to why Plaintiff was placed into any "forbearance" status whatsoever (180 days or any other),

17   without Plaintiff's knowledge or consent, and as part of Defendant's overall faulty loan scheme

18   alleged in the Complaint.

19          Defendant concludes that there is no "damage" and "no injury" for the "inadequately pled

20   claim of fraud, " an entirely conclusory statement, and as it trying to fully adjudicate this matter

21   on a Motion to Dismiss.  Defendant does so without addressing the actual pled allegations.

22   Defendant does not present any legal authority applicable to this case warranting dismissal.

23          Therefore, Defendant's request for dismissal of this and all Counts should be denied in

24   their entirety.

25
26   **VI.     DEFENDANT DOES NOT IDENTIFY OR ADDRESS THE ACTUAL**
27   **         PLED ALLEGATIONS, ALLEGATUONS THAT DO MAKE OUT**
28   **         COLORABLE CLAIM FOR NEGLIGENCE AND NEGLIGENT**
29   **         MISREPRESENTATION**
30
31          Again, Defendant offers substitutes its own theories of Plaintiff's Complaint in lieu of the

32   actual allegations pled. Defendant wrongly states that Plaintiff's negligence claims are based on

33   "Plaintiff's faulty contention that he requested information about a forbearance on multiple

1  occasions and received exactly what he asked for—and that he was somehow damaged as a

2  result."  These allegations never appear. At this juncture, it is respectfully submitted that

3  Defendant merely engages in a pattern of substituting its own self-serving version or

4  interpretation of the actual Complaint, betraying the absence of any valid bass for dismissal.

5        Plaintiff never alleges, nor does Defendant furnish any elaboration, for its bald statement

6  that Plaintiff requested information about any specific "forbearance" or that "Plaintiff" received

7  "exactly what he asked for".  To the contrary, as previously outlined, in the Complaint and the

8  preceding points incorporated here by reference, Plaintiff merely inquired of modification or

9  forbearance options on Defendant's website/portal, then was placed into forbearance

10  automatically by Defendant. Plaintiff never consented to any modification terms or plan or being

11  placed into any "forbearance" status.

12        Congress passed the Coronavirus Aid, Relief and Economic Security ("CARES") Act in

13  part to furnish relief to American homeowners struggling economically with the onset of the

14  COVID Pandemic. The CARES Act provides that mortgagees and servicers to erect forbearance

15  options for all federally-backed mortgages.

16        The CARES Act, applying to the majority of American consumer loans, explicitly makes

17  borrower participation voluntary (it is alleged that CARES Act applies here and that CARES Act

18  incentivizes placement of borrowers into forbearance through its provision for servicing fees to

19  banks and servicers).

20        Specifically, CARES Act requires that Plaintiff/borrowers be informed of forbearance

21  program terms and conditions and that an informed borrower consciously make a decision to join

22  or participate in any said program.

23        The Court is also referred to the Consumer Financial Protection Bureau ("CFPB"),

24  stating that before a bank servicing a loan can grant forbearance, it is supposed to request and to

25  receive an attestation of a COVID-19-related financial hardship from the borrowers:

26  REQUIREMENTS FOR SERVICERS.— (1) IN GENERAL

27

28  Upon receiving a request for forbearance from a borrower under subsection (b), the servicer shall

29  with no additional documentation required other than the borrower's attestation to afinancial

30  hardship caused by the COVID–19cemergency and with no fees, penalties, or interest

31  (beyond the amounts scheduled or calculated as if the borrower made all contractual payments

32  on time and in full under the terms of the mortgage contract) charged tothe borrower in

33  connection with the forbearance, provide the forbearance for up to 180 days, which may be

34  extended for an additional period of up to 180 days at the request of the borrower, provided that,

12

1    the borrower's request for an extension is made during the covered period, and, at the borrower's
2    request, either the initial or extended period of forbearance may be shortened.
3    See, https://www.congress.gov/116bills/hr748/BILLS-116hr748enr.pdf.

4          Finally, Defendant argues that Plaintiff has not "established a duty of care:" required for
5    negligence claim, citing Gipson v. Kasey, 214 Ariz. 141 (2007). In that case, the Arizona High
6    Court elaborated on standards applicable as to whether a duty exists and as for standards
7    applicable to whether a duty is breached. The former is a legal determination; the latter is a
8    factual determination for the jury to decide. Therefore, Defendant's argument that dismissal is
9    warranted for breach and causation is inherently flawed, in that breach of duty and causation are
10   question of fact for a jury under Gipson.

11         The Arizona High Court concluded that whether a duty exists legally turns on (1) the
12   relationship that existed between Plaintiff and Defendant; 2) the foreseeability of harm to a
13   foreseeable victim borrower requesting options for forbearance on Defendant's website,
14   borrower not possibly knowing that Defendant would unilaterally throw Plaintiff into
15   forbearance with the attendant resulting harm, and (3) the presence of statutes (here, the CARES
16   Act expressly making forbearance voluntary for borrowers and erecting provisions that
17   Defendant furnish forbearance program disclosures and procure "hardship" certifications from
18   borrowers. See, Gipson, 212 Ariz at 238. 239, 129 P.3d 960-961; foot note 3).

19         It is submitted that the Complaint adequately alleges that Defendant owes a duty of care
20   to borrower Plaintiff and that it was breached, causing harm to Plaintiff. See, Snyder v. HSBC
21   Bank, USA, 913 F. Supp. 755, 776 (Ariz. D.Ct. 2012): ("[A]t least in some traditional lnlender-
22   borrower  relationships, a duty to disclose exists which could create a material question of fact to
23   survive pleadings."); citing Silving, 800 F. Supp. 2d. 1055, 2011 WL 2669246@14 (rejecting
24   defendants' claim that "mortgage lenders do not generally have legal duties to borrowers from
25   which negligence claims may arise"); Narramore v. HSBC Bank, USA, 2010 US DIst. LEXIS
26   67933, 2010 WL 273815 @8 (DAriz. July 7, 2010 (holding that a loan servicer has a duty of care
27   a "which [can] create a material question of fact to survive pleadings").

28         Notably, the Complaint details at length an extensive faulty servicing scheme by
29   Defendant, a material element of which is Defendant's deliberate or reckless failure to disclose
30   that mere inquiry of a website for options would then place a borrower into forbearance, all the
31   while the Defendant deliberately or recklessly not disclosing the terms of the actual forbearance
32   into which Defendant places a borrower like Plaintiff.  In short, the faulty servicing scheme

1   operated by Defendant's non-disclosure to Plaintiff and similarly situated borrowers. It is

2   submitted that a colorable claim of legal duty is pled with sufficiency such that the Court can

3   determine there is a legal duty owed by Defendant to Plaintiff.

4         Though an issue of first impression, it is submitted that Defendant's effected its alleged

5   faulty loan scheme from a position of vastly superior sophistication, resources and bargaining

6   power over Plaintiff, compelling the conclusion that it could foresee causing harm to borrowers,

7   including Plaintiff. Plaintiff respectfully requests that a duty of care be determined to exist.

8   Alternatively, Plaintiff requests that the Court reserve or stay ruling on this matter pending

9   development of the facts through discovery. Regardless, relief requested by Defendant should be

10   denied.

11

12 **VII.**     **DEFENDANT DOES NOT IDENTIFY OR ADDRESS THE ACTUAL**
13           **PLED ALLEGATIONS, ALLEGATUONS THAT DO MAKE OUT**
14           **COLORABLE CLAIM FOR BREACH GOOD FAITH/FAIR DEALING**
15

16         It is submitted that the Complaint sufficiently pleads a viable claim for Breach of the

17   Implied Covenant of Good Faith and Fair Dealing. The Complaint alleges that Defendant, with

18   its faulty servicing scheme, used its own discretion and vastly superior bargaining power to place

19   Plaintiff into forbearance without his knowledge or consent, effectively forcing modification

20   upon Plaintiff's loan/account and resulting in harm to borrower. It is submitted that any

21   reasonable person would infer or conclude that Defendant exercised its own discretion and

22   adversely affected the benefit of Plaintiff's bargain with Defendant. Any borrower, including

23   Plaintiff, reasonably expects that Note and Deed of Trust would not arbitrarily be modified

24   without their knowledge and consent, particularly one carried out through Defendant's deliberate

25   faulty loan servicing scheme.  Defendant's ability to arbitrarily do what it wants renders any

26   reasonable expectations moot under the parties' agreements.  See, Synder, 913 F.Supp.  755, 772

27   (D.Ariz. 2012). The duty is implied in all contracts. "The essence of that duty is that neither

28   party will act to impair the right of the other to receive the benefits which flow from their

29   agreement or contractual relationship." citing, Rawlings v. Apodaca, 151 Ariz. 149

30   (1986). "[B]ecause a party may be injured when the other party to a contract manipulates

31   bargaining power to its own advantage, a party may nevertheless breach its duty of good faith

32   without actually breaching an express covenant in the contract." citing Wellgs Fargo Bank v.

33   Arizona Laborers, 201 Ariz 474, 38 P.3d 12, 29 (Ariz. 2002) (other citations omitted). Se,, also,

1      <u>Snyder</u>,  913 F.Supp. 755, 772 Foot Note 23: " [A]rizona law recognizes that a party can breach

2      the implied covenant of good faith and fair dealing both by exercising express discretion in a

3      way inconsistent with a party's reasonable expectations and by acting in way not expressly

4      excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably

5      expected benefits of the bargain." citing <u>Bike Fashion Corp. v. Kramer</u>, 202 Ariz. 420, 424, 46

6      P3d. 431, 435 (AzCtApp. 2002) (other citations omitted).

7          Defendant states that a "special relationship" does not exists in conclusory fashion. To

8      the contrary, under the CARES ACT, and the factual allegations of the Complaint, this matter

9      does not concern a mere relationship between "lender" and "borrower" or "debtor" and "creditor;

10     rather, Defendant, as alleged, took it upon itself to force a forbearance plan upon Plaintiff and

11     modify Plaintiff's loan without his knowledge or consent. Defendant was ostensibly

12     administering a loan servicing program on behalf of borrowers, under a Stature designed to

13     protect borrowers during the COVID Pandemic. To the extent that Defendant chose to

14     implement that Program to the detriment of borrowers like Plaintiff and deprive them of the

15     reasonable benefit of their bargains, Defendant breached the implied covenant.  It is submitted

16     that with this background, it is submitted that the Court can infer from the facts pled that

17     Defendant assumed a fiduciary duty to borrowers like Plaintiff with respect to its implementation

18     of forbearance servicing plans permitted under CARES Act that are voluntary, not forced. <u>See</u>,

19     <u>Thomas v. Wells Fargo, N.A.</u>, 866 F.Supp.2d 1101, 1107 (D.AZ. 2012).  See, also, Thomas, 866

20     F.Supp.2d at 1107: "These relationships [special relationships] are characterized by elements of

21     public interest, adhesion, and fiduciary responsibility." citing, <u>Rawlings,</u> 151 Ariz. at 158 (1986).

22     The Complaint alleges just that; a public loan servicing Program (CARES Act), morphed by

23     Defendant into a forbearance plan of "adhesion" for borrowers.  The facts as pled, and all

24     plausible inferences thereof, make out the breach good faith/fair dealing claim.

25
26     **VII.**     <u>**DEFENDANT DOES NOT IDENTIFY OR ADDRESS THE ACTUAL**</u>
27            <u>**PLED ALLEGATIONS, ALLEGATUONS THAT DO MAKE OUT**</u>
28            <u>**COLORABLE CLAIM FOR UNJUST ENRICHMENT**</u>
29

30          The Complaint alleges under the CARES Act, Defendant procures servicing fees as

31     incentive for placing borrowers into forbearance. Plaintiff asserts an Unjust Enrichment Claim

32     for any gain procured by Defendant at the expense of Plaintiff in the form any unlawfully

33     obtained servicing fees.  Defendant wrongly argues that Plaintiff cannot prove that Defendant

1    was not "justified in collecting servicing fees". Again, Defendant misapprehends the standard
2    applicable to a Motion to Dismiss—Plaintiff is not required to prove its case in its Complaint;
3    rather allege/plead a sufficient claim. See, Arnold & Assocs, Inc. v. Misys Healthcare System,
4    275 F.Supp. 2d  1013, 1024 (D.Ariz.2003) laying out the elements of Unjust Enrichment
5    squarely met by the Complaint allegations: "In order to establish a claim for unjust enrichment, a
6    plaintiff must show that, (1) it conferred a benefit upon defendant, (2) defendant's benefit is at
7    plaintiff's expense, and (3) it would be unjust to allow defendant to keep the benefit." citing,
8    Murdock-Bryant Constr. Inc. v. Pearson, 146 AZ 148 (1985) (other citations omitted).
9    "However, the mere receipt of a benefit is insufficient."  citing,  Pyeatte v. Pyeatte, 135 Ariz.
10   346, 353 (Ct.App. 1982).  "Rather, retention of the benefit without compensation must be
11   unjust." Id., citing Pyeatte, 135 Ariz. at 353.
12       The Complaint does sufficiently allege that Defendant retained a benefit (servicing fees)
13   at Plaintiff's expense (arbitrary imposition upon him of an undisclosed forbearance plan), that i\s
14   unjust by virtue of Defendant's overall unlawful conduct in administering a public program, that
15   is alleged unjust.  Therefore, the Defendant's relief should be denied.

17   **VIII.   THE COMPLAINT SUFFICIENTLY ALLEGES INTENTIONAL AND**
18   **RECKELESS ACTS**

20       Defendant states no basis to strike Plaintiff's various claims alleging intent, reckless and
21   reprehensible conduct with respect to a faulty loan servicing scheme solely within Defendant's
22   control and discretion. Defendant, likened to adjudicating this matter, and not applying the
23   standards applicable to a Motion to Dismiss, vaguely opines that Plaintiff has "no support" for
24   punitive damages. Defendant does nothing, throughout its Motion to Dismiss, but seek to deflect
25   the Court's attention from the actual pled allegations regarding its faulty servicing scheme.
26   Innuendo and conclusory statements are not valid arguments for Dismissal.
27       Plaintiff refers the Court to the preceding allegations and authorities demonstrating that
28   Plaintiff has sufficiently pled its Claims. Defendant cannot adjudicate this matter on this Motion
29   merely with innuendo: (1) citing Plaintiff's prior credit history dating back years, (2) baldly
30   stating that Plaintiff "should be surprised" that he was placed into forbearance merely by
31   inquiring through Defendant's website regarding options and (3) Plaintiff should not be
32   "surprised" by being placed into forbearance on terms solely chosen and applied by Defendant.

1     The logical import of Defendant's arguments throughout its Memorandum: a bank/servicer can

2     do to a borrower whatever it pleases. Such a self-serving result, it is submitted, is patently

3     "reprehensible", and only betrays any basis to Dismiss the Claims as alleged.

4          Plaintiff withdraws its claims under Fair Debt Collections Practices Act and for

5     Declaratory Judgment. Plaintiff respectfully requests leave to Amend the Complaint for any

6     claim it deems insufficient.

7                          **<u>CONCLUSION</u>**

8          Defendant's Motion to Dismiss and to Strike should be denied in its entirety, Defendant

9     should be required to file and Answer, and for such other relief the Court deems proper. Plaintiff

10     respectfully requests permission to Amend the Complaint should the Court deem any count or

11     claim insufficient as determined.

12

13     March 30, 2021                    *Adam Zoldessy*

14                             Adam Zoldessy

15

16

17
18     The foregoing was filed via Arizona ECF this
19     30th day of March, 2021, and a copy mailed ob
20     March 31, 2021 to:
21     Tim R. Pomeroy
22     Aldridge Pite LLP
23     4375 Jutland Drive Suite 200
24     San Diego, CA 92177-0935
25     *Adam Zoldessy*
      Adam Zoldessy